UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JOSHUA OLIVO,

Defendant.

**ORDER**

19 Cr. 738 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Olivo is charged with conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Indictment (Dkt. No. 8) Count One); using, carrying, and possessing a firearm during and in relation to the drug trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 942(c)(1)(a)(i), (c)(2) (id. Count Two); and conspiracy to traffic in firearms, in violation of 18 U.S.C. § 922(a)(1)(A) (id. Count Three).

Olivo was arrested and presented before Magistrate Judge Robert W. Lehrburger on September 27, 2019. (See Dkt. No. 4) He was ordered detained on grounds of danger to the community. (Id.) Olivo now seeks release on bail.[1] (Mar. 23, 2020 Def. Ltr. (Dkt. No. 23)) The Government opposes his request. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25)) Trial is currently scheduled for May 11, 2020. (Jan. 2, 2020 Order (Dkt. No. 15))

**I.  LEGAL STANDARDS**

The Bail Reform Act, 18 U.S.C. § 3142(g) directs that the Court consider the following factors in determining whether pretrial release is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime

---

[1] Olivo has consented to having his bail application decided on the papers, and has waived his right to a hearing. See Dkt. No. 28.

> of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release . . . .

18 U.S.C. § 3142(g).

In order for a defendant to be detained pending trial, the Government must demonstrate (1) by a preponderance of the evidence, that there is no condition or combination of conditions that will ensure the defendant's return to court, or (2) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community.

## II. THE PARTIES' ARGUMENTS

### A. Defendant Olivo

Olivo incorporates by reference arguments made by his co-defendant Pierre Greene. (Mar. 23, 2020 Def. Ltr. (Dkt. No. 23) at 1) Greene argues that he should be released because (1) the Metropolitan Correction Center ("MCC"), where he is housed, "presents tremendous health risks to those who operate the facility and the inmates who are housed there," given the coronavirus pandemic; and (2) "the MCC has repeatedly proven that it is unable to protect the health and safety of the individuals in its custody." (Mar. 22, 2020 Def. Ltr. (Dkt. No. 21) at 3, 5) In an April 4, 2020 letter, Olivo states that "already-abysmal conditions at the

MCC . . . have deteriorated even further," with "at least four confirmed positive cases of COVID-19 at the MCC. . . ."  (Apr. 4, 2020 Def. Ltr. (Dkt. No. 28) at 1)

Olivo also argues that "he poses neither a risk of flight nor . . . a danger to the public. . . ."  (Mar. 23, 2020 Def. Ltr. (Dkt. No. 23) at 1)  As to risk of flight, Olivo asserts that he "is supported by a large family network."  (Id.)  With respect to danger to the community, Olivo states that "[o]ther than a 2011 misdemeanor conviction, [he] has no other criminal record."  (Id.)  Olivo further states that he "expect[s] to plead guilty pursuant to a plea agreement to violating 21 U.S.C. 814 (b)(1)(B) – a non-violent, drug offense."  (Id.)

As to a bail package, Olivo proposes "conditions [] including home incarceration."  (Id.)

### B. The Government

The Government opposes Olivo's application for pretrial release, arguing that (1) Olivo poses a danger to the community and a serious risk of flight; and (2) the conditions at the MCC do not warrant his release.  (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 5-8)

The Government argues that Olivo "introduc[ed] loaded handguns into narcotics transactions[,] [which] presents a clear danger to the community, as do the methamphetamines."  (Id. at 7)  The Government further argues that the "evidence [against Olivo] is overwhelming," and that he "face[s] significant criminal exposure[,] . . . [which] provides a strong incentive not to appear."  (Id.)  The Government also notes that Olivo has a conviction for "possession of a forged instrument."  (Id. at 8)

As to the risk Olivo faces in the MCC as a result of the coronavirus pandemic, the Government notes that "the BOP and MCC have in place a plan to address all potential health issues," and that Olivo is not at high risk of severe illness from contracting the virus.  (Id. at 5)

3

## III. BAIL REFORM ACT ANALYSIS

### A. Nature of the Offenses Charged

Defendant Olivo is charged with (1) conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine; (2) using, carrying, and possessing a firearm during and in relation to that drug conspiracy; and (3) conspiracy to traffic in firearms. (Indictment (Dkt. No. 8), Counts One, Two, Three)

According to the Complaint, on twenty-one occasions between January 9, 2019 and September 19, 2019, Olivo sold a total of 4,976 methamphetamine pills to an undercover officer.[2] Each transaction was video recorded. (Cmplt. (Dkt. No. 1) at 4)

On February 26, 2019, Olivo sold fifty methamphetamine pills to an undercover officer. During that transaction, Olivo described Greene as his "brother," and stated that Greene "travels to Georgia to obtain narcotics and occasionally, firearms." (Cmplt. (Dkt. No. 1) at 3-4) The undercover gave Olivo $320 as a "down payment on a firearm." (Id. at 4) Olivo later told the undercover that Greene would be travelling to Georgia for Mother's Day and would bring back a firearm. (Id. at 5)

On May 8, 2019, Olivo sold the undercover 161 methamphetamine pills and told the undercover that his "brother" would be returning from Georgia with more pills and "'at least one gun.'" (Id.)

On May 14, 2019 – two days after Mother's Day – Olivo provided the undercover with 500 methamphetamine pills and two loaded handguns. Greene drove Olivo to the meeting. (Id.)

---

[2] Olivo and Greene marketed the methamphetamine they sold as ecstasy. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 1)

4

On July 17, 2019, Olivo met with the undercover officer, said that he would retrieve pills from his "brother's girlfriend's apartment," and then entered the building where Greene's girlfriend – co-defendant Magaly Robledo – resides. Olivo returned to the undercover with 157 methamphetamine pills, which he sold to the undercover. (Id. at 5-6)

On July 24, 2019, Olivo told the undercover that his "brother" would be returning to Georgia to acquire more drugs and firearms. (Id. at 6)

While selling methamphetamine pills to the undercover officer on August 16, 2019, Olivo provided the undercover with Greene's telephone number. (Id.) Greene later exchanged text messages with the undercover officer in which he indicated that he "expected to have additional firearms to sell by around September 13, 2019." (Id. at 6-7)

Olivo, Greene, and Robledo were arrested on September 27, 2019. That same day, the Government executed a search warrant at Robledo's residence. Officers recovered more than a kilogram of methamphetamine in a safe in Robledo's bedroom. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 2)

The Government describes Olivo as the "primary narcotics and firearms distributor" of the conspiracy, and notes that he "personally sold . . . narcotics and weapons, including two handguns[,] to a customer who was an undercover police officer." (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 1)

Olivo is charged with three offenses involving large-scale narcotics trafficking, the use of firearms in connection with narcotics trafficking, and trafficking in firearms. He faces a mandatory minimum sentence of ten years' imprisonment on the drug charge, and a mandatory

consecutive sentence of five years' imprisonment on the Section 924(c) charge.[3] Because of the drug conspiracy and Section 924(c) charges pending against Olivo, there is a presumption under 18 U.S.C. § 3142(e)(3)[4] that no condition or combination of conditions will ensure Olivo's return to court and the safety of the community.

### B. Weight of the Evidence

As to the weight of the evidence against Olivo, it is overwhelming. The Government has video evidence of Olivo selling methamphetamine to an undercover officer on twenty-one separate occasions. On one such occasion, Olivo sold the undercover officer two loaded handguns in addition to 500 methamphetamine pills. The Government's proof also includes more than a kilogram of methamphetamine that was recovered from Robledo's residence on the day of Olivo's arrest. (Id. at 1-2)

### C. History and Characteristics of the Defendant

Olivo is 31 years old and was born and raised in New York. Other than a year spent with his mother in Maryland, and four years in Georgia during college, Olivo has spent his entire life in New York City. Olivo's father, brother and co-defendant Pierre Greene, aunt and four cousins reside in New York. Olivo is single but has two children, ages 7 years and 10 months old, from two separate relationships.

---

[3] The parties have engaged in plea discussions, and Olivo has accepted the Government's offer of a (b)(1)(B) drug count, and a stipulated Guidelines range of 108 to 135 months' imprisonment. (Apr. 4, 2020 Def. Ltr. (Dkt. No. 30)) Olivo's plea to this count – which has not yet been taken – would subject him to a five year mandatory minimum sentence.

[4] 18 U.S.C. § 3142(e)(3): "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed –
  (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ;
  (B) an offense under section 924(c) . . . of this title. . . ."

Olivo has worked briefly unloading trucks, at Key Food stocking shelves, and at Macy's and Tesmo Entertainment. He is financially supported by his family. (PTS Rpt.)

As to criminal record, Olivo has a 2011 misdemeanor conviction for possession of a forged instrument in the third degree. A bench warrant was issued in that case. (Id.)

### D.   Risk of Flight and Danger to the Community

Given Olivo's family ties and longtime residence in New York City, and his minor criminal record, the Government has not demonstrated by a preponderance of the evidence that there is no condition or combination of conditions that can ensure the Defendant's return to court.

As to danger to the community, the Government must establish by "clear and convincing evidence" that there is no condition or combination of conditions that will ensure the safety of the community if the Defendant is released. That standard is met here, and Olivo has not rebutted the presumption that detention is appropriate. See 18 U.S.C. § 3142(e)(3)(A).

There is overwhelming and unchallenged evidence here that Olivo was involved in the large-scale distribution of methamphetamine, and in the sale of firearms. That evidence includes video-recorded undercover buys of both methamphetamine and handguns, and more than a kilogram of methamphetamine seized from the home Olivo was seen entering during a drug transaction. Given that Olivo and his brother Pierre Greene sold drugs and guns together out of Greene's girlfriend's apartment, there is little reason to believe that home confinement or family suasion could ensure the safety of the community.

Olivo contends, however, that the COVID-19 pandemic and conditions at the MCC justify his release. But Olivo is not elderly – he is 31 years old – and he does not have any reported underlying health conditions that would put him at a higher risk of contracting COVID-

19. Acknowledging the risk that the virus presents in an incarceratory setting, that risk does not – at this time – outweigh the danger that Olivo presents to the community.

## **CONCLUSION**

The Government has met its burden of demonstrating that there is no condition or combination of conditions that can ensure the safety of the community if Olivo is released on bail. Accordingly, he will remain detained pending trial or plea. The Court is cognizant of the risk to inmates presented by the current COVID-19 crisis, however. See Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020). Accordingly, Olivo's application for pretrial release is denied without prejudice to renewal in the event circumstances materially change.

Dated: New York, New York
April 6, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge